**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

ULYANA KUZNETSOV, et al., on behalf of themselves and others similarly situated,

Plaintiff,

v.

XPRESSSPA – JDEE JV LLC, et al.,

Defendants.

Case No.: 10 CV 3473 (JMA)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES, ADMINISTRATION FEES AND REIMBURSEMENT OF EXPENSES**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee
30 East 39th Street, 2nd Floor
New York, New York 10016
Telephone: (212) 465-1188

## TABLE OF CONTENTS

I. INTRODUCTION……………………………………..........................................1

II. CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF APPROXIMATELY 22% OF THE SETTLEMENT FUND………........................2

A. The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit ..........................................................2

B. The Goldberger Factors Support an Award of Approximately 22% of the Settlement Fund.....…………………………………...……………….............5

1. Class Counsel's Time and Labor ....................................................................6

2. Magnitude and Complexity of the Litigation ..........................................................7

3. Risk of Litigation ..........................................................................................8

4. Quality of Representation ..........................................................................…9

5. Fee in Relation to the Settlement ...................................................................10

6. Public Policy Considerations ........................................................................12

III. THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF APPROXIMATELY 22% OF THE SETTLEMENT FUND ..............................................................................................................13

IV. FEES IN RELATION TO AWARDS TO BE PAID BASED ON CLAIMS MADE ……………………………………………………………………………...15

V. CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER THE SETTLEMENT AGREEMENT……………………...........................16

VI. ADMINISTRATION FEES…………………………………………………....17

VII. CONCLUSION………………........................................………..........................18

# TABLE OF AUTHORITIES

CASES Page(s)

A.H. Phillips v. Walling, 324 U.S. 490 (1945)……………………..........................…12

Adorno v. Port Auth. of N.Y. & N.J., 685 F.Supp.2d 507, 512 (S.D.N.Y.2010)………..16

Allende v. Unitech Design, Inc., 783 F.Supp.2d 509, 511 (S.D.N.Y. 2011)…………….15

In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418 (S.D.N.Y. 2001)…...........3

Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81 (S.D.N.Y. 2001)......................8

Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,
484 F.3d 162 (2d Cir. 2004)......................………..............................................…....15

Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,
522 F.3d 182 (2d Cir. 2008).......................................…………………….................4

Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728 (1981)...............................7

In re Boesky Sec. Litig., 888 F. Supp. 551 (S.D.N.Y. 1995)..................….....................13

Brunson v. City of N.Y.,
Nos. 94 Civ. 4507, 94 Civ. 5632, 2000 WL 1876910 (S.D.N.Y. Dec. 22, 2000) ............9

City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974)........................................8

City of Riverside v. Rivera, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)…...16

Clark v. Ecolab,
Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y. May
11, 2010), at *8 ..............................................................................…….............11

deMunecas v. Bold Food, LLC,
No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ..................…...... passim

Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326 (1980)……….................................13

In re EVCI Career Colls. Holding Corp. Sec. Litig.,
No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)……………….............5

Frank v. Eastman Kodak Co., 228 F.R.D. 174 (W.D.N.Y. 2005)………..................10, 13

In re Gilat Satellite Networks, Ltd.,
No. 02 Civ. 1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)……….......…...............10

In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436 (S.D.N.Y. 2004)......….......14

Goldberger v. Integrated Res. Inc., 209 F.3d 43 (2d Cir. 2000)…..............….......... passim

Hicks v. Morgan Stanley,
No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)..............…….......11, 13

In re Indep. Energy Holdings PLC Sec. Litig.,
302 F. Supp. 2d 180 (S.D.N.Y. 2003)………………………..........................….........16

J.I. Case Co. v. Borak, 377 U.S. 426 (1964) ………………..............................….......13

Karpus v. Borelli (In re Interpublic Sec. Litig.),
Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)...….........4

Khait v. Whirlpool Corp.,
No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)...................….......11, 13

In re Lloyd's Am. Trust Fund Litig., 2002 WL 31663577……...........................….......14

Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........…......1, 14

McDaniel v. Cnty. of Schenectady, 595 F.3d 411 (2d Cir. 2010).......... ......…...............3

McMahon v. Olivier Cheng Catering & Events, LLC,
No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ...............….…….2, 3, 12

Mohney v. Shelly's Prime Steak,
No. 06 Civ. 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009)
.........................................................................................................................11

In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465 (S.D.N.Y. 1998) ....1, 14

Parker v. Jekyll & Hyde Entm't Holdings, LLC,
No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010).......….........................13, 14

Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985)………………............................13

In re Polaroid ERISA Litig.,
No. 03 Civ. 8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007)……...........................3, 4

Prasker v. Asia Five Eight LLC,
No. 08 Civ. 5811, 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010)……...............................13

In re Prudential Sec. Inc. Ltd. P'ships Litig., 912 F. Supp. 97 (S.D.N.Y. 1996)................7

Rabin v. Concord Assets Grp., Inc.,
No. 89 Civ. 6130, 1991 WL 275757 (S.D.N.Y. Dec. 19, 1991)……………......................14

In re Ramp Corp. Sec. Litig.,
No. 05 Civ. 6521, 2008 WL 58938 (S.D.N.Y. Jan. 3, 2008) ...................................3, 4, 5

In re RJR Nabisco, Inc. Sec. Litig.,
MDL No. 818, No. 88 Civ. 7905, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ............14

Sand v. Greenberg,
No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010) ..............................2, 3, 12,13

Savoie v. Merchs. Bank, 166 F.3d 456 (2d Cir. 1999)....................................................14

Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,
258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003)........................…………..............................3

In re Sumitomo Copper Litig., 74 F. Supp. 2d 393 (S.D.N.Y. 1999)………..................12

Taft v. Ackermans,
No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)……...................................9

Tucker v. City of N.Y., 704 F.Supp.2d 347, 359 n. 10 (S.D.N.Y.2010)………………...15

Varljen v. H.J. Meyers & Co.,
No. 97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000)………..........................5

Velez v. Majik Cleaning Serv., Inc.,
No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)……………..................10

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96 (2d Cir. 2005)........................3, 4

Westerfield v. Wash. Mut. Bank,
Nos. 06 Civ. 2817, 08 Civ.0287, 2009 WL 5841129 (E.D.N.Y. Oct. 8, 2009)
.....................................................................................................................................11

Willix v. Healthfirst, Inc.,
No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)………...................passim

STATUTES

29 U.S.C. § 216(b)……………………………………………………..........................................8

Fair Labor Standards Act
................................................................................................................................ passim

OTHER AUTHORITIES

Fed. R. Civ. P. 23 ................…………………………………..............................................6, 9

## I. INTRODUCTION

Lee Litigation Group, PLLC ("Class Counsel" or "LLG") respectfully submits this motion for an award of attorneys' fees and expenses in the amount of 22% of the settlement fund (the "Settlement Fund") and class administration fees of $16,000. This unopposed motion is being submitted simultaneously with Plaintiff's Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval").[1]

Class counsel has spent more than 245 attorney hours prosecuting this case. *See* Declaration of C.K. Lee in Support of Plaintiff's Unopposed Motion for Approval of Attorneys' Fees, Administration Fees and Reimbursement of Expenses ("Lee Decl.") ¶4. Multiplying these hours by the hourly rate of each attorney results in a lodestar amount of $98,715. Lee Decl. ¶4. Class Counsel's request for 22% of the Settlement Fund – $29,000 – is less than 1/3 of the "lodestar". The proposed legal fees are fair because the hours worked exceeds the percentage of Settlement Fund, i.e., a negative lodestar multiplier. Courts routinely award counsel three times the lodestar or higher in class action settlements. *See, e.g.,Maley v. Del Global Techs. Corp*., 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market-Makers Antitrust Litig*., 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding multiplier of 3.97 times lodestar). Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a positive result. Lee Decl. ¶6. For the reasons set forth below, Class Counsel

1 For a detailed account of the factual and procedural background of this case, Class Counsel respectfully refers the Court to the Memorandum of Law in Support of Plaintiff's Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement and the Supporting Declaration of C.K. Lee.

respectfully submits that the attorneys' fees and expenses reimbursement they seek are fair and reasonable under the applicable legal standards, and should be awarded in light of the contingency risk undertaken and the result achieved in this case.

## II. CLASS COUNSEL IS ENTITLED TO A REASONABLE FEE OF APPROXIMATELY 22% OF THE SETTLEMENT FUND.

Class Counsel is entitled to reasonable attorneys' fees to compensate it for its work in recovering unpaid overtime wages on behalf of the class. The request for approximately 22% of the Settlement Fund including expenses is below the accrued lodestar, is reasonable and well within the range approved by courts in similar cases.

### A. The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit.

In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *Willix v. Healthfirst, Inc*., No. 07 Civ. 1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010). Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *deMunecas*, 2010 WL 3322580, at *8; *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *7 (S.D.N.Y. Mar. 3, 2010); *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel"). If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Willix*, 2011 WL 754862, at *6;

*McMahon*, 2010 WL 2399328, at *7; *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."). Although there are two ways to compensate attorneys for successful prosecution of statutory claims, the lodestar method and the percentage of the fund method, *McDaniel v. Cnty.of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010), the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *Id.*; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *deMunecas*, 2010 WL 3322580, at *8. There are several reasons that courts prefer the percentage method. First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted); *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at *2 n.2 (S.D.N.Y. Jan. 3, 2008); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 WL 2116398, at *2 (S.D.N.Y 4 July 19, 2007); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007). The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); see also *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,* 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); *In re Am. Bank Note Holographics, Inc.,* 127 F. Supp. 2d 418, 432 (S.D.N.Y.

2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order"). This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 191 (2d Cir. 2008), where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. While *Arbor Hill* is not controlling because it does not address a common fund fee petition, its reasoning supports use of the percentage of the fund method. *Willix,* 2011 WL 754862, at *7; *deMunecas*, 2010 WL 3322580, at *9. Second, the percentage of the fund method promotes early resolution. It "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted); see also *In re Ramp Corp. Sec. Litig.,* 2008 WL 58938, at *2 n.2; *In re Polaroid ERISA Litig*., 2007 WL 2116398, at *2; *Velez*, 2007 WL 7232783, at *7. The percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method. *Karpus v. Borelli (In re Interpublic Sec. Litig.),* Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004).

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." Id. (*quoting Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000); see also *In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2 n.2; *In re*

*EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007). While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously. *Goldberger,* 209 F.3d at 50; *see In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

Because the actual lodestar exceeds the fees calculated based on a percentage method, Plaintiff's counsel's legal fees are fair.

**B. The *Goldberger* Factors Support an Award of Approximately 22% of the Settlement Fund.**

Reasonableness is the touchstone for determining attorneys' fees. In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

(1) the time and labor expended by counsel;

(2) the magnitude and complexities of the litigation;

(3) the risk of litigation;

(4) the quality of representation;

(5) the requested fee in relation to the settlement; and

(6) public policy considerations.

209 F.3d at 50 (quotation marks omitted). All of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

**1. Class Counsel's Time and Labor**

Class Counsel spent significant effort to achieve the $137,000 settlement. From the outset, Class Counsel thoroughly investigated the claims and defenses, focusing on the underlying merits of the class members' claims, the damages to which they were entitled, and the propriety of class certification. Class Counsel met with Plaintiff Kuznetsov, as well as fourteen other spa technicians. Through discovery, Class Counsel obtained, reviewed, and analyzed over 12,000 pages of discovery documents comprised of personnel files, pay data and time records, and XpresSpa's policies and procedures concerning the payment of wages. Class Counsel also reviewed the results of an investigation by the New York State Department of Labor of the pay practices of XpresSpa, prior to XpresSpa's change in its pay structure for spa technicians to all commissions in May 2009, which found a median shortage of approximately $300 per spa technician and obtained backpay from XpresSpa for those technicians to resolve any disputes. This comprehensive discovery enabled Class Counsel to perform a class-wide damage assessment. Class Counsel conducted depositions of XpresSpa's President Marisol Binn and Chief Executive Officer Moreton Binn, and XpresSpa deposed two members of the settlement class.

On November 21, 2011, Plaintiff filed a motion to conditionally certify an FLSA collective class. XpresSpa filed its opposition to the motion on January 6, 2012 and Plaintiff filed her reply memorandum on February 21, 2012. On September 20, 2012, the District Court terminated Plaintiff's motion without prejudice to her ability to reinstate the motion should the parties' settlement negotiations fail.

Since the commencement of this action, the parties have engaged in extensive

settlement negotiations. The initial settlement offers from Defendants were only for the named Plaintiff and were for nominal value. As the litigation progressed through depositions and continued intensive document exchange, the parties began to explore the possibilities and parameters for a class-wide settlement. After the motion for conditional collective certification was fully briefed, the parties reached a settlement in principle on October 10, 2012.

Class Counsel subsequently prepared and submitted a preliminary approval motion, together with supplemental submissions as directed by the Court, which was approved by the Court on May 16, 2013. In performing all of the aforementioned tasks, Class Counsel spent more than 245 hours of attorney time for an aggregate lodestar of $98,715. Id. at ¶4. These hours are reasonable for a case such as this and were compiled from contemporaneous time records maintained by each attorney participating in the case. Id. at ¶ 4. The actual amount of legal fees requested is less than the actual legal fees incurred.

**2. Magnitude and Complexity of the Litigation.**

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ships Litig*., 912 F. Supp. 97, 100-01 (S.D.N.Y. 1996). Courts have recognized that wage and hour cases involve complex legal issues. "FLSA claims typically involve complex mixed questions of fact and law . . .. These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys*., Inc., 450 U.S. 728, 743 (1981). Among FLSA cases, the most complex type is the "hybrid" action brought here,

where state wage and hour violations are brought as an "opt out" class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b). Because the same set of operative facts is being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum. See *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001). This case hinged on several complex questions of fact and law. In particular, the parties dispute that the settlement class is entitled to overtime and XpresSpa maintains that the settlement class falls under the commission sales exemption in § 7(i) of the FLSA. These mixed factual and legal questions support approval of Class Counsel's attorneys' fee request. See *deMunecas*, 2010 WL 3322580, at *7-8 (awarding attorneys' fees of 33% of the common fund in wage and hour case involving mixed questions of law and fact).

**3. Risk of Litigation.**

The risk of litigation is also an important factor in determining a fee award. Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award. *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 470 (2d Cir. 1974), abrogated by *Goldberger*, 209 F.3d 43 (2d Cir. 2000). "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Id.* at 471. Class Counsel undertook to prosecute this action without any assurance of payment for its services, litigating this case on a wholly contingent basis in the face of tremendous risk. Lee Dec. ¶7. Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. Lawyers undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make an enormous

investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel stood to gain nothing in the event the case was unsuccessful. *Id.*

Moreover, the circumstances of this case presented hurdles to a successful recovery. To establish liability, Kuznetsov would have to counter XpresSpa's documentation that the settlement class members were paid in compliance with the two requirements in § 7(i) – i.e., that at least 50% of their compensation was paid in commissions and their effective hourly rate for all hours worked was more than one and one-half times the Federal minimum wage applicable at the time. In addition, Kuznetsov would bear the burden of establishing that all elements of certification under the FLSA and Rule 23 have been met. This factor therefore weighs in favor of granting the requested fees. *See*, *e.g.*, *Brunson v. City of N.Y.*, Nos. 94 Civ. 4507, 94 Civ. 5632, 2000 WL 1876910, at *4 (S.D.N.Y. Dec. 22, 2000) (where class counsel "faced significant obstacles . . . verifying . . . tasks performed by individual plaintiffs," class counsel was entitled to a premium).

**4. Quality of Representation.**

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467). Defendants agreed to pay a total of $137,000 to settle this litigation. Class members that do not opt-out of the settlement will receive pro rata awards based on their length of employment with

XpresSpa as follows: (i) one year or more, $360 per claimant (142 members), (ii) six months or more but less than one year, $310 per claimant (45 members), and (iii) less than six months, $195 per claimant (61 members).The class is comprised of 248 individuals. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is a good deal for the class. The settlement amount will be available to class members without the uncertainty and delay of trial.

Class Counsel has substantial experience prosecuting large-scale wage and hour class and collective actions. Lee Decl. ¶3. Class Counsel's skill and experience were directly responsible for the favorable settlement and weigh in favor of granting the requested fees. *Velez*, 2007 WL 7232783, at *8 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported a 33.33% contingency fee award); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (citing plaintiffs' counsel's experience as one factor supporting an attorneys' fee award of 40% of the fund).

**5. Fee in Relation to the Settlement.**

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." *See*, e.g., *In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007). "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *Id.* (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003)) (internal quotation marks omitted). Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are

reasonable. *See*, e.g., *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *16 n.41 (finding a 30% fee would not constitute a windfall "given the modest size of the [$20 million] settlement").

The size of the $137,000 settlement weighs in favor of granting the requested fee award of approximately 22% of the Settlement Fund. *See*, e.g., *Mohney v. Shelly's Prime Steak*, No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in FLSA and NYLL tip misappropriation case). Courts in this Circuit have routinely granted requests for approximately one-third of the fund in cases with settlement funds substantially larger than this one. *See*, e.g., *Willix*, 2011 WL 754862,at *6 (awarding class counsel one-third of $7,675,000 settlement fund in FLSA and NYLL wage and hour action); *Clark*, 2010 WL 1948198, at *8-9 (awarding class counsel 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case); *Westerfield v. Wash. Mut. Bank,* Nos. 06 Civ. 2817, 08 Civ.0287, 2009 WL 5841129, at *4-5 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38 million fund in nationwide overtime suit).

This is true even though "[a]s the size of the settlement fund increases, the percentage of the fund awarded as fees often decreases so as to prevent a windfall to plaintiffs' attorneys." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (internal quotation marks omitted). A fee of approximately 33% of the Settlement Fund is reasonable and "consistent with the norms of class

litigation in this circuit." *Willix*, 2011 WL 754862, at *7 (*quoting Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)).

**6. Public Policy Considerations.**

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encouraged experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig*., 74 F. Supp. 2d at 399. The FLSA and NYLL are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective–ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted). Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Willix*, 2011 WL 754862, at *6; *deMunecas*, 2010 WL 3322580, at *8; *McMahon*, 2010 WL 2399328, at *7. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Willix*, 2011 WL 754862, at *6; *deMunecas*, 2010 WL3322580, at *8; *McMahon*, 2010 WL 2399328, at *7. Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes. *Willix*, 2011 WL 754862, at *6; *deMunecas*, 2010 WL 3322580, at *8; *McMahon*, 2010 WL 2399328, at *7; see also *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.") Courts have recognized that

fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Khait*, 2010 WL 2025106, at *8; *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010). Class actions are also an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964). Particularly where, as here, the settlement fund is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard." *Frank*, 228 F.R.D. at 189. If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id.*; *deMunecas,* 2010 WL 3322580, at *8; *Sand*, 2010 WL 69359, at *3.

## III. THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF APPROXIMATELY 22% OF THE SETTLEMENT FUND

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50. The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.*; *see also Parker*, 2010 WL 532960, at *2. As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Hicks*, 2005 WL 2757792, at *8. Courts then consider whether a multiplier is warranted based on factors, such as: (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995). *See*

*also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460; *Parker*, 2010 WL 532960, at *2. Courts regularly award lodestar multipliers between two to six times lodestar. *See*, e.g., *In re Lloyd's Am. Trust Fund Litig*., 2002 WL 31663577, at *27 (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley v.Del Global Techs. Corp*., 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market-Makers Antitrust Litig*., 187 F.R.D. 465,489 (S.D.N.Y. 1998) (awarding multiplier of 3.97 times lodestar); *In re RJR Nabisco, Inc. Sec. Litig*., MDL No. 818, No. 88 Civ. 7905, 1992 WL 210138, at *5-8 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Rabin v. Concord Assets Grp., Inc*., No. 89 Civ. 6130, 1991 WL 275757, at *1-2 (S.D.N.Y. Dec. 19, 1991) (awarding multiplier of 4.4).

In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . .." *Id.* Here, a lodestar cross-check results in a negative multiplier because Class Counsel's lodestar ($98,715) is more than 3X the requested legal fees ($29,000) based on the percentage method. Class Counsel spent more than 245 hours litigating and settling this matter. Lee Decl. ¶4. The time spent by Class Counsel is described in the Declaration of C.K. Lee and Class Counsel's contemporaneous time records attached thereto. *Id.* at ¶4; Ex. A (Time Records). See *Spann v. AOL Time Warner Inc.*, 35 Employee Benefits Cas. 1648 (2005) (D.J. Cote) (1/3 of settlement fund awarded as legal fees where lodestar exceeded such amount).

## IV. FEES IN RELATION TO AWARDS TO BE PAID BASED ON CLAIMS MADE

Class Counsel's Fee is 22% of the Settlement Fund of $137,000, or $29,000. Because payouts to Class Members were to be made on a claims made basis, the actual number of Class Members that will receive payouts is 60 individuals, for a total amount of $20,375. Although an argument may be considered that legal fees incurred that exceeds the actual pay-out to plaintiffs on a class case is inappropriate, there is no such proportionality requirement in the Second Circuit.

First, the amount negotiated provided that Class Members would receive $137,000 after deductions for professional fees and service awards. If all Class Members opted in, the full amount of the settlement amount would be available and paid out to them. Class Counsel should not be penalized for negotiating a fair settlement and providing value to Class Members participating in the settlement. This is especially buttressed by the fact that no individual had opposed the proposed settlement.

Secondly, there is no proportionality requirement so long as "a party [sic] has established his entitlement to some relief on the merits of his claims." *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 484 F.3d 162 (2d Cir. 2004); See also *Allende v. Unitech Design, Inc.*, 783 F.Supp.2d 509, 511 (S.D.N.Y. 2011) ("While the requested attorneys' fees exceed plaintiffs' own recovery in the case, that is of no matter....the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights"). *See, e.g., Tucker v. City of N.Y.,* 704 F.Supp.2d 347, 359 n. 10 (S.D.N.Y.2010) ("[S]ettled case law [is] that the setting of

statutory [attorneys' fees] does not require proportionality between the plaintiff's recovery and the amount of the fee award.") (citing *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)); *Adorno v. Port Auth. of N.Y. & N.J.,* 685 F.Supp.2d 507, 512 (S.D.N.Y.2010) (Chin, D.J.) ("The courts have rejected a *per se* proportionality rule, *i.e.,* proportionally linking the prevailing party's attorneys' fees to the degree of monetary success achieved.").

Notwithstanding the fact that proportionality in the Second Circuit is flatly rejected, we argue that Class Counsel's attorneys' fees is in fact proportional because Class Counsel is only receiving 22% of the available Settlement Fund.

Even if the case were to proceed to trial and a larger judgment is attained, the problem of distributing the judgment to Class members would still exist, and Class Counsel would only continue to accrue significant additional fees and costs.

Finally, if the Court were to reduce legal fees while approving the settlement, the only party to benefit would be the Defendants, the party that is alleged to have committed wage and hour violations and which chose to engage in litigation with Class Counsel for over two years prior to settlement, rather than an early expedited settlement.

**V. CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER THE SETTLEMENT AGREEMENT**

Under the terms of the Settlement Agreement, the attorneys' fees award of $29,000 sought by Class Counsel does not include expenses. *See* Settlement Agreement ¶ 2(C). "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks omitted). Here, Class

Counsel's actual expenses of more than $5,000 were incidental and necessary to the representation of the Class. Lee Decl. ¶13. These expenses and costs include court reporting and photocopies. *Id.* Accordingly, Plaintiff respectfully requests that the Court approve Class Counsel's application for reimbursement of expenses of $5,000.

**VI. ADMINISTRATION FEES**

Advanced Litigation Strategies, LLC ("ALS"), is an administration company established by Class Counsel. ALS has acted as the Settlement Administrator in this lawsuit and has disseminated Class Notice and Claim Forms to Class Members, performed calculations of awards to each Class Member, reviewed and retained Claim Forms submitted by Class Members and maintained correspondences with Class Members. Lee Decl. ¶9.

XpresSpa provided a class list of 248 Class Members of which one individual did not have contact details. Lee Decl. ¶10. ALS mailed the Court-approved Notice to 247 Class Members that had been provided by XpresSpa. 29 mailed notices were returned as undeliverable. ALS conducted a skip trace search through the public records including white page searches, Facebook, LinkedIn, Google and ACRIS for each class notice that was returned as undeliverable. After diligently pursuing deliverable mailing information, ALS re-mailed notices to 8 Class Members.

The Parties had agreed to fees of up to $16,000 to the Settlement Administrator, which is lower than prevailing market rates for similar class size. Having an entity controlled by Class Counsel act as administrator is consistent with the practice in the Second Circuit, as Class Counsel has served as an administrator on a number of class settlements. See *Amaya et. al. v. 166 Park Inc. et. al.,* 11-cv-1081; *Marte et. al. v.*

*Energy Resources Personnel LLC et. al.,* 11-cv-2490; *K. Ae Han et. al. v. AB Green Gansevoort, LLC et. al.,* 11-cv-2423; *Quach v. Fortune Paradise, Inc. et. al*., 10-cv-3927.

**VII. CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court grant Plaintiff's Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and enter an Order awarding (i) attorneys' fees in the amount of $29,000, which is 22% of the Settlement Fund, and reimbursement of expenses in the amount of $5,000 and (ii) administration fees in the amount of $16,000.

Dated: July 23, 2013

Respectfully submitted,

LEE LITIGATION GROUP, PLLC

By: s/ C.K.Lee
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
***Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class***